UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KATHRYN WARREN, on behalf of the Estate of WALTER STUBBLEFIELD, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:19-CV-2735-B |
| UNITED STATES OF AMERICA, | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant United States of America's (Government's) Motion to Dismiss Plaintiff's Negligent-Hiring and Supervision Claims (Doc. 5). For the reasons that follow, the Court **GRANTS** the Government's motion and **DISMISSES** the claims **WITHOUT PREJUDICE**.[1]

### I.

### BACKGROUND[2]

This is a negligent-care case, and a tragic one at that. Mr. Walter Stubblefield was a veteran of the United States military who was entitled to medical care and treatment through the Department of Veterans Affairs (VA). Doc. 1, Compl., ¶ 7. In January of 2017, Mr. Stubblefield was undergoing medical care at the Dallas VA Community Living Center when he was knocked to the floor. *Id.* Mr. Stubblefield was then brought to the Dallas VA Intensive Care Unit (ICU) at the

---

[1] The Court dismisses without prejudice because its dismissal is based on a lack of subject-matter jurisdiction. *See Hix v. U.S. Army Corps. of Eng'rs*, 155 F. App'x 121, 122 (5th Cir. 2005) (per curiam).

[2] All facts are drawn from Plaintiff's Complaint (Doc. 1) and are taken as true for purposes of this motion.

Dallas VA Medical Center. *Id.* The Government, through the VA, staffed the Dallas VA Medical Center with medical staff and employees. *Id.* ¶ 6.

Because of his fall, Mr. Stubblefield suffered several cerebral contusions. *Id.* ¶ 7. Moreover, after he was admitted to the center, the Dallas VA Medical Center took responsibility for diagnosing and treating Mr. Stubblefield's medical conditions. *Id.*

Yet, Mr. Stubblefield's health deteriorated once at the Dallas VA Medical Center. *Id.* ¶ 8. On or about February 5, 2017, Mr. Stubblefield's blood pressure fell and he became tachycardic. *Id.* He became "minimally responsive." *Id.* At the same time, Mr. Stubblefield was diagnosed with Methicillin-Sensitive Staphylococcus Aureus (MSSA), a skin infection caused either by contact with another person or contaminated items or surfaces such as towels, sheets, and clothing. *Id.* Plaintiff alleges that Mr. Stubblefield's MSSA was a result of the Government's negligence and improper treatment of Mr. Stubblefield. *Id.* Furthermore, Plaintiff alleges that Mr. Stubblefield developed sepsis as a result of the untimely diagnosis and improper treatment. *Id.* This sepsis led to a loss of muscle mass and then organ failure. *Id.*

Tragically, Mr. Stubblefield died on February 28, 2017, at 12:31 am. *Id.* His causes of death were listed as "Multiple Organ System Failure," "Septic Shock," and "Aspiration Pneumonia," which Plaintiff alleges were consequences of the MSSA and sepsis that the Government negligently caused. *Id.* ¶ 9.

Subsequently, Plaintiff, on behalf of the Estate of Mr. Stubblefield, brought this action under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(a), seeking to hold the Government directly and vicariously liable for the Dallas VA Medical Center's alleged negligence in treating Mr. Stubblefield, and for negligently hiring and supervising Dallas VA Medical Center's employees. *Id.*

¶¶ 10–21. Plaintiff also brings a claim under the Texas Survival Statute, Section 71.021 of the Texas Civil Practice and Remedies Code. *Id.* ¶¶ 22–25.

The Government then brought this motion to dismiss the negligent-hiring and supervision claims on the grounds that those claims are barred by the discretionary function exception, 28 U.S.C. § 1346(b), of the FTCA. *See* Doc. 5, Def.'s Mot., 1.

All briefing has been submitted on the motion, and the motion is ripe for review.

## II.

## LEGAL STANDARD

Motions to dismiss based on the discretionary function exception are analyzed as motions to dismiss based on lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *SEE ALX El Dorado, Inc. v. Sw. Sav. & Loan Assoc./FSLIC*, 36 F.3d 409, 411 n.5 (5th Cir. 1994). "As a court of limited jurisdiction, a federal court must affirmatively ascertain subject-matter jurisdiction before adjudicating a suit." *Sawyer v. Wright*, 471 F. App'x 260, 260 (5th Cir. 2012) (per curiam). "Without jurisdiction conferred by statute or the Constitution, federal courts lack the power to adjudicate claims." *Rivera v. United States*, 2016 WL 183708, at *3 (W.D. Tex. Jan. 14, 2016) (citing *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005)). "[T]he party seeking relief bears the burden of establishing subject-matter jurisdiction." *Sawyer*, 471 F. App'x at 260 (citing *United States v. Hays*, 515 U.S. 737, 743 (1995)). And although in deciding a 12(b)(1) motion to dismiss "a federal court may consider evidence outside the pleadings," if the motion is based solely on the complaint, "the court must decide whether the allegations in the complaint sufficiently state a basis for subject matter jurisdiction." *Rivera*, 2016 WL 183708, at *3 (citations omitted). In doing so,

"[t]he Court accepts as true all allegations and facts in the complaint." *Robert Juan Dartez, LLC v. United States*, 824 F. Supp. 2d 743, 746 (N.D. Tex. 2011).

## III.

## ANALYSIS

The Court finds that the discretionary function exception to the FTCA applies to Plaintiff's negligent-hiring, training, supervision, and staffing claims. Moreover, the Court finds that Plaintiff is not entitled to jurisdictional discovery on whether the discretionary function exception applies to her case. Thus, the Court **GRANTS** the Government's motion and **DISMISSES** these claims.

A.   *The Discretionary Function Exception*

The Government believes that the discretionary function exception to the FTCA bars Plaintiff's negligent-hiring, training, supervision, and staffing claims. Doc. 5, Gov't's Mot., 1. The Government contends that hiring and supervising employees "falls squarely" into the discretionary function exception, noting that "[u]nsurprisingly, federal courts within the Fifth Circuit have repeatedly dismissed FTCA claims alleging negligent hiring and supervision of federal employees and have applied the Fifth Circuit's holding [in *Radford v. United States*, 264 F.2d 709, 710 (5th Cir. 1959)] to bar negligent-training claims . . . ." *Id.* at 4–5 (footnotes omitted) (collecting cases). The Government argues that Plaintiff's claims are "precisely the kind of interference 'that would seriously handicap efficient government operations [.]'" *Id.* at 5 (quoting *United States v. S.A. Empresa de Vicao Aerea Rio Grandense*, 467 U.S. 797, 814 (1984)).

In opposing the Government's motion, Plaintiff argues that: (1) she "has not been afforded the benefit of full and complete discovery to determine whether [the Government's] hiring practices are subject to a mandatory policy, rule, or regulation," Doc. 8, Pl.'s Resp., 4; (2) "the decision to hire

and provide sufficient staff to provide a level of care that meets the required national standards is not . . . 'discretionary,'" *id.* at 6; and (3) "even if it were," the Government knew about the issues and therefore the Government's failure in its employment decisions at issue in this case are not decisions "which Congress intended to protect under the discretionary function exception." *Id.*

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *Young v. United States*, 727 F.3d 444, 446–47 (5th Cir. 2013) (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). For there to be consent, the United States must "ma[ke] a clear statement waiving sovereign immunity." *Rivera*, 2016 WL 183708, at *4 (citing *Young*, 727 F.3d at 447). "Courts must strictly construe all waivers of" immunity, and therefore "all ambiguities" are resolved in favor of there being no waiver of immunity. *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998).

One way in which the federal government has waived its immunity is through the FTCA. "The FTCA, subject to various exceptions, waives sovereign immunity from suits for negligent or wrongful acts of Government employees." *United States v. Gaubert*, 499 U.S. 315, 318 n.4 (1994); 28 U.S.C. §§ 1346)(b), 2671. However, in enacting the FTCA, Congress did not waive the federal government's immunity for:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the existence or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). This is known as the "discretionary function exception" to the FTCA. *See Gaubert*, 499 U.S. at 322.

In *Gaubert*, the Supreme Court laid out a two-part test to determine whether the discretionary function exception applies to a particular case. First, because the discretionary function exception "covers only acts that are discretionary in nature," a court must determine whether the acts in question "involv[e] an element of judgment or choice[.]" *Id.* (alterations in original) (citation and quotations omitted). "The requirement of judgment or choice is not satisfied if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive." *Id.* (citation and quotations omitted).

Second, even if the acts in question involve judgment or choice, that judgment must be "of the kind that the discretionary function exception was designed to shield." *Id.* at 322–23 (citation and quotations omitted). Specifically, the exception covers only those judgments "based on considerations of public policy." *Id.* at 323 (citation and quotations omitted).

### 1. Whether the act in question involves an element of judgment or choice

Plaintiff admits that she has not pled that the Government's hiring or employment decisions were governed by any "statute, policy, or regulation . . . ." *See* Doc. 8, Pl.'s Resp., 3. Yet, Plaintiff argues that the "fail[ure] to hire enough doctors, nurses, and staff to provide proper care to all patients" is not discretionary as it "fl[ies] in the face of responsible and ethical medical practices . . . ." *Id.* at 7 (emphasis omitted).

However, courts in the Fifth Circuit—and in this district—have uniformly held that the Government's hiring and employment decisions are discretionary. *See, e.g.*, *Dorsey v. Relf*, 2013 WL 791604, at *5 (N.D. Tex. Mar. 4, 2013) ("Decisions regarding hiring, supervising training, and retaining employees involve many public policy considerations and matters of judgment and choice . . . ."), *aff'd*, 559 F. App'x 401 (5th Cir. 2014); *Shirley v. United States*, 2006 WL 708651, at *3 (N.D.

Tex. March 21, 2006) (collecting cases) ("Courts have repeatedly held that employment decisions, i.e., the manner in which the United States selects, trains, and supervises its employees, are discretionary functions."), *aff'd*, 232 F. App'x 419 (5th Cir. 2007) (per curiam).

Thus, although there might be "responsible and ethical medical practices" that the Government should follow, see Doc. 8, Pl.'s Resp., 9, without a statute, policy, or regulation mandating a directive that the VA failed to follow, the claims at issue here involve discretionary conduct.

Additionally, Plaintiff states that "there is a difference between negligent hiring, training, supervision, and staffing claims." *Id.* at 2. For the purpose of applying the discretionary function exception, the Court disagrees with Plaintiff. "Decision-making employees must evaluate and weigh the qualifications of applicants, consider staffing requirements, conduct an ongoing assessment of training needs, and make numerous daily decisions regarding supervision of employees." *Dorsey*, 2013 WL 791604, at *5. Thus, without specific directives in place, employment decisions, such as those at issue here, "involv[e] an element of judgment or choice[.]" *Gaubert*, 499 U.S. at 322 (alterations in original) (citation and quotations omitted).

Accordingly, the first prong of *Gaubert* is satisfied. *See id.*[3]

---

[3] Plaintiff also argues that the Government only uses the word "training" in its conclusion to its motion, and "staffing" once on page five. Doc. 8, Pl.'s Resp., 2. Although it is true that the Government's motion does state that it is seeking dismissal of just the negligent-hiring and supervision claims, see Doc. 5, Def.'s Mot., 1, it is clear from the context of that statement that the Government is seeking dismissal of the negligent-hiring, supervision, training, and staffing claims. The Government cites to paragraphs 16(d) and 18–21 of the complaint when explaining the claims of which it seeks dismissal. *See id.* Those paragraphs include the negligent-hiring, supervision, training, and staffing claims. *See* Doc. 1, Compl. ¶¶ 16(d), 18–21. Additionally, the Government reiterates that it seeks dismissal of all these claims on page five of its motion. *See* Doc. 5, Def.'s Mot., 5.

    2.    <u>Whether the discretionary function exception was designed to shield the Government's employment decisions</u>

Next, the Court must determine whether the discretionary function exception was designed to shield the Government's decisions at issue in this case. *See id.* The Court holds that it was.

In arguing that the exception was not designed to protect the decisions at issue in this case, Plaintiff argues that "courts have held that employment decisions are not decisions grounded in public policy when those employment decisions are made after notice of the wrongful conduct which forms the basis of the claim is already known to the government agency." Doc. 8, Pl.'s Resp., 8. To Plaintiff, "a government agency cannot be said to engage [in decisions] . . . grounded in public policy considerations, when it already had knowledge that such practices are inadequate, yet chose not to remedy the issue." *Id.*

Plaintiff believes that here, the Government had "actual and/or constructive notice that it was not sufficiently staffing its facility," and "that their patients were not receiving proper medical attention as [a] result . . . ." *Id.* at 9. Moreover, Plaintiff points to "media attention in the past" concerning the Dallas VA Medical Center's "staffing shortages . . . causing severe health risks to the patients." *Id.* This allegedly included "biohazard waste" piling up due to a lack of staff, amongst other sanitation issues. *Id.* Plaintiff argues that it was these exact risks that led to Mr. Stubblefield's MSSA infection. *Id.* Plaintiff also notes various "instances of malpractice [involving Mr. Stubblefield that] . . . root themselves in the fact that [the Government] failed to hire enough staff, or failed to supervise staff . . . ." *See id.* at 6–7.

Plaintiff relies on two cases for its awareness-based arguments, *Brignac v. United States*, 239 F. Supp. 3d 1367 (N.D. Ga. 2017) and *Tonelli v. United States*, 60 F.3d 492 (8th Cir. 1995). *See* Doc.

8, Pl.'s Resp., 8–9. However, those cases are distinguishable. Both involved the Government's alleged failure to act in light of notice of illegal conduct by one of its employees. In *Tonelli*, the Eighth Circuit explained that "[f]ailure to act after notice of illegal action does not represent a choice based on plausible policy considerations." 60 F.3d at 496. There, the post office did not act after receiving notice that one of its employees was sifting through mail and removing items. *Id.* at 494. The employee was arrested before the post office took any action. *Id.* The Eighth Circuit thus reversed the district court's dismissal of the plaintiffs' negligent-supervision and retention claims based on the post office's failure to act. *Id.* at 496.

*Tonelli*'s limited scope is demonstrated by the fact that the court there affirmed the dismissal of the negligent-hiring claims, as "the post office's choice between several potential employees involves the weighing of individual backgrounds, office diversity, experience and employer intuition." *Id. Tonelli* also recognized that "[i]ssues of employee supervision and retention generally involve the permissible exercise of policy judgment and fall within the discretionary function exception." *Id.* at 9 (citation omitted). Thus, *Tonelli*'s holding is limited to the proposition that retaining an employee after knowledge of that employee's *illegal* conduct cannot be "based on plausible policy considerations." *See id.*

This narrow reading of *Tonelli* is confirmed by *Brignac*. In *Brignac*, the district court found that the discretionary function exception did not apply when the facts alleged that the Government "knew or should have known that [the employee] had sexually preyed upon patients—conduct involving illegal acts—before hiring and retaining him." 239 F. Supp. 3d at 1381. There, the employee, a physician, was terminated from previous employment after sexually assaulting three patients. *Id.* at 1370–71. The plaintiff then was allegedly sexually assaulted by the employee herself.

*Id.* at 1370. Relying on *Tonelli*, the court in *Brignac* held that "as a matter of law, [the Government] could not have acted with discretion—it was not a 'choice'—if it knew" about the employee's past illegal conduct. *Id.* at 1381–82 (citing *Tonelli*, 60 F.3d at 496).

Here, Plaintiff argues that the underlying rationale for the holdings in *Tonelli* and *Brignac* applies to Mr. Stubblefield's interactions with the Government, where the Government allegedly knew, or should have known, "that it was not sufficiently staffing its facility . . . ." Doc. 8, Pl.'s Resp., 9. Plaintiff goes on to say that there is no "'discretion' to decide whether or not to properly staff [] facilities . . . ." *Id.* However, the Court reads those cases narrowly, as holding that failure to act in light of *illegal* conduct is the exception to the general rule that employee decisions are discretionary acts, as the failure to act in light of knowledge of illegal conduct cannot be said to be based on "plausible policy considerations." *Tonelli*, 60 F.3d at 496; *see also Brignac*, 239 F. Supp. 3d at 1381–82 (citing *Tonelli*, 60 F.3d at 496).

Here, however, what is and is not "sufficient[] staffing," see Doc. 8, Pl.'s Resp., 9, is discretionary. *See Shirley*, 2006 WL 708651, at *3. And even if the Government was specifically tasked with "properly staff[ing] its facilities," see Doc. 8, Pl.'s Resp., 9, "[i]mposing a duty with no specific designation of how to carry out such authority is the essence of discretion." *Shirley*, 2006 WL 708651, at *3.

Thus, the Court finds that *Tonelli* and *Brignac* are distinguishable. The Court therefore concludes that Plaintiff's negligence-based employment claims fall under the general consensus that "employment decisions, i.e., the manner in which the United States selects, trains, and supervises its employees, are discretionary functions that the discretionary exception is meant to shield." *Dorsey*, 2013 WL 791604, at *5 (collecting cases). The many factors that go into employment

decisions—applicant qualifications, staffing and training needs, *id.*, along with the allocation of the Government's resources—"require the balancing of competing objectives, and are of the nature and quality that Congress intended to shield from tort liability." *Id.* (quoting *Tonelli*, 60 F.3d at 496).

The second prong of *Gaubert* is thus satisfied. *See Gaubert*, 499 U.S. at 322. The discretionary function exception is therefore applicable to Plaintiff's negligent-hiring, supervision, training, and staffing claims.

B.     *Whether to Allow Discovery*

Plaintiff seeks to avoid dismissal by asking the Court for discovery "to determine whether [the Government's] hiring practices are subject to a mandatory policy, rule, or regulation." Doc. 8, Pl.'s Resp., 4. The Court denies Plaintiff's request.

Plaintiff, in seeking discovery, argues that the Government "is in the best position to know whether an internal hospital policy or procedure exists that would have prevented the [wrongful conduct] suffered by the Plaintiff." *Id.* at 4–5 (alterations in original) (quoting *Willett v. United States*, 2013 WL 3280323, at *4 (M.D. Ala. June 27, 2013)). Plaintiff believes that the Government has failed to deny the existence of any statute, rule, or regulation with respect to its employment practices. *Id.* at 5.

Plaintiff relies on *Willett*, in which, Plaintiff explains, "the court held that the plaintiff should have an opportunity to contest [the] denial [of a statute, rule, or regulation] via limited jurisdictional discovery . . . ." *Id.* Thus, Plaintiff asks this Court for "full and complete discovery in order to determine whether an internal or external policy, protocol, regulation, or rule governs [the Government's] hiring practices." *Id.*

"The party seeking discovery bears the burden of showing its necessity."[4] *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (citation omitted). To do so, a party generally must "allege[] the specific facts crucial to immunity which demonstrate[] a need for discovery." *Id.* at 342 (alterations in original) (citation and quotations omitted). Moreover, "a party is not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed . . . ." *Id.* (citation omitted). This is especially true where, as here, the plaintiff "is attempting to disprove the applicability of an immunity-derived bar to suit because immunity is intended to shield the defendant from the burdens of defending the suit, including the burdens of discovery." *Id.* (citation omitted).

Applying these principles to Plaintiff's case, the Court denies Plaintiff's discovery request for three reasons. First, Plaintiff's request for "full and complete discovery," Doc. 8, Pl.'s Resp., 5, is too broad. Even in *Willett*, the discovery was limited to "whether [the] employees and administrators were under a mandatory duty to avoid allegedly tortious acts or omissions." *See* 2013 WL 3280323, at *4 n.4. Full and complete discovery would fail "to shield the defendant from the burdens of defending the suit . . . ." *Freeman*, 556 F.3d at 342.

Second, and similarly, Plaintiff's request for discovery for an "external policy, protocol, regulation, or rule," Doc. 8, Pl.'s Resp., 5, is also inappropriate. In *Freeman*, the district court found that "[s]uch a directive [would] be in the public realm and therefore fact discovery [would] not assist" the plaintiffs. 556 F.3d at 341 (citation and quotations omitted). The Fifth Circuit "f[ound] no fault in the district court's conclusion" that this very fact was grounds for denying the discovery

---

[4] Because the burden on this issue is on Plaintiff, Plaintiff's argument that Defendant has not denied the existence of a statute, rule, regulation, policy, or protocol, see Doc. 8, Pl.'s Resp., 4–5, is unavailing.

request. *Id.* at 342. Here, Plaintiff would not need discovery to find an "external policy, protocol, regulation, or rule . . . ." Doc. 8, Pl.'s Resp., 5. The requested external discovery "is [thus] not likely to produce the facts needed to withstand" the motion to dismiss. *Freeman*, 556 F.3d at 342 (citation omitted). Thus, to the extent Plaintiff requests discovery on external directives, that request is denied.

Third, the Court also denies Plaintiff's request for jurisdictional discovery insofar as it seeks to determine whether there is "an internal . . . policy, protocol, regulation, or rule [that] governs [the Government's] hiring practices." Doc. 8, Pl.'s Resp., 5. The Court first notes that Plaintiff's request for discovery on internal documents is in the context of its request for "full and complete discovery . . . ." *Id.* As discussed above, a request for discovery in immunity cases must be cabined. *See Freeman*, 556 F.3d at 342 ("The party seeking discovery typically meets this burden by alleging the specific facts crucial to immunity which demonstrate[] a need for discovery.") (alterations in original) (citation and quotations omitted).

Moreover, Plaintiff has not shown how "the requested discovery is [] likely to produce the facts needed to withstand" the Government's motion. *See id.* (citation omitted). Employment decisions such as general hiring, staffing, training, and supervision are inherently discretionary. *See Dorsey*, 2013 WL 791604, at *5. This is unlike the issue in *Willett*, where it was alleged that the Government knew about an employee's history of sexual assault, yet still retained the employee. *See* 2013 WL 328023, at *1. Thus, there, the Government's alleged negligent conduct could be regulated by "specific security features or procedures that [the Government] must follow to prevent violent crimes by third parties" and involved a specific course of action—the retaining of one employee after specific illegal conduct. *See id.* at *4.

But unlike in *Willett*, the nature of the claims here do not "create a reasonable expectation [that] discovery will reveal evidence in [Plaintiff's] favor," and involve general allegations against unnamed employees. *Id.* at *5 (citing *Twombly*, 556 U.S. at 556). Plaintiff has not articulated specific facts that show that "the requested discovery [] is likely to produce the facts needed to withstand" the motion to dismiss. *See Freeman*, 556 3d at 342 (citation omitted); *see also Barber v. United States*, 642 F. App'x 411, 415 (5th Cir. 2016) (per curiam) (affirming denial of discovery where the plaintiff was "speculat[ing] without any factual basis" that discovery would unveil needed material, even where the plaintiff was seeking one specific document); *cf. Walding v. United States*, 2009 WL 902423, at *6 (W.D. Tex. Mar. 31, 2009) (granting discovery request because the plaintiffs "s[ought] 'complete, specific, and detailed information'" about a specific course of action).

For these reasons, Plaintiff's request for jurisdictional discovery is denied. The Court's decision is based on the principle that the discretionary function exception is designed "to shelter the government from the burdens of answering a lawsuit—including those related to intrusive discovery—not just from potential monetary liability." *Freeman*, 556 F.3d at 342 (citation omitted). And because the request is denied, the Court concludes that the Government's motion must be granted.

## IV.

## CONCLUSION

For the foregoing reasons, the Government's motion (Doc. 5) is **GRANTED**. The facts demonstrate that the Court lacks subject-matter jurisdiction over the claims at issue in this motion. Accordingly, Plaintiff's claims in paragraphs 16(d) and 18–21 of her complaint (Doc. 1) are **DISMISSED WITHOUT PREJUDICE.**

SO ORDERED.

SIGNED: April 16, 2020.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE